UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA WILLIAM FAYE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-01694** |
| **TERREBONNE PARISH CONSOLIDATED GOVERNMENT, ET AL** | **SECTION "B" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

Also before the Court is a **Motion to Dismiss (R. Doc. 21)** filed by Nurse Kelly Gaudet

### I.   Factual and Procedural Background

Joshua William Faye ("Faye"), is an inmate currently housed in the Bossier Medium Security Facility in Plain Dealing, Louisiana. Faye filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Terrebonne Parish Consolidated Government, Warden Claude Triche, Deputy Brody Fanguy, and Nurse Kelly Gaudet.

Faye alleges that the first incident occurred on October 28, 2016, while he was incarcerated in Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana, when Deputy Fanguy was spraying a cleaning chemical that got in Faye's eye. R. Doc. 1, p. 6. As a result, he complained that he was in pain and his medical need allegedly ignored. *Id.* Instead of providing

1

him with medical care, Faye alleges that Deputy Fanguy responded that the chemical would not kill him and that he would be alright. *Id.* He thereafter proceeded with what he was doing.

Next Faye alleges that another incident occurred in TPCJC soon after when he informed Nurse Kelly of what he experienced. *Id.* He alleges that he told her that chemical had been sprayed in his eyes and that it was an emergency. *Id.* In response Nurse Kelly refused to give him medical attention and instead informed him to see the nurse at 8:00 P.M. *Id.* Faye contends that he was denied medical care for eleven hours. *Id.*

Faye therefore seeks compensation for his pain and suffering and for "future damages" for pain and suffering in the amount of seventy-five thousand dollars. *Id.* Faye also seeks the termination of all the defendants or alternatively the suspension and elimination of their pay. *Id.*

## II.     Standards of Review Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.

2

*Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.   Analysis**

   **A.   Terrebonne Consolidated Government**

Faye named the Terrebonne Parish Consolidated Government (TPCG) as a defendant in this action. To establish liability against a parish government under § 1983, the plaintiff must point to the Parish's policy or custom or breach of duty that caused the alleged constitutional deprivation. *See Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690–91 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984). Faye has not and cannot do so in this case where his claims are directed to the sheriff's deputies and other personnel at the TPCG arising from the administration of and his treatment at the jail. *See O'Quinn v. Manual*, 773 F.2d 605, 609 (5th Cir. 1985) (stating that the administration of the jail is province of the sheriff).

Faye cannot state a basis for liability on the part of the Parish arising from the actions of the deputies and the conditions at the TPCG. He has not and would not be able to point to any parish policy or custom related to the incident involving the chemical splash which would be required to support any claim of liability against the Parish itself under *Monell*.

Faye's claims against Terrebonne Parish Consolidated Government must be dismissed as

frivolous and otherwise for failure to state a claim for which relief can be granted.

### B. Warden Claude Triche

Faye named Warden Claude Triche ("Triche") as a defendant because he is in charge of the Terrebonne Parish Criminal Justice Complex and the medical unit. Faye simply named Triche but made no allegations against him. Thus, it seems that Faye named Triche because of his leadership role over the prison. However, a supervisory official, like Triche, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").

Triche only would be liable under § 1983 if he were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Faye does not allege and in fact denies that Triche was personally involved in his medical care. He also has not alleged that he has suffered any injury as a result of any directive, training, or other policy implemented by Triche that would create vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Faye has not alleged a personal connection or action that would render Triche liable for the actions or inactions of his subordinates under § 1983.

C.     **<u>Medical Indifference</u>**

Faye also asserted a claim against Nurse Gaudet for not providing him with medical treatment when he requested and instead making him wait until 8:00 PM med pass as a result of his exposure to a cleaning chemical which got in his eyes caused him pain. Faye also sued Deputy Fanguy for refusing to get medical care for him after he sprayed the chemical. He contends that Deputy Fanguy told him he would be alright. He also does not allege any injury to his eye as a result of the spray but does complain that he experienced pain for a period of time.

As a pretrial detainee, his constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State and its actors to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, the Court applies an analysis that is identical to that applied in Eighth Amendment cases. *Hare*, 74 F.3d at 643. Under this standard, the plaintiff must show that an official acted with deliberate indifference to his constitutional rights. *Id.*, at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372

F.3d 294, 302 (4th Cir. 2004) (finding that the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

The Court received copies of Faye's medical and grievance records and those same records were provided to Faye by defense counsel.  Under these circumstances, the Fifth Circuit has held that "'[m]edical records of sick calls, examinations, diagnoses, and medications may [be used to] rebut an inmate's allegations of deliberate indifference.'"  *Gobert*, 463 F.3d at 347 n.24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

In this case, Faye's testimony and the records reflect that, while at Terrebonne Parish Criminal Justice Complex, Faye complained on October 28, 2016, at 9:00 a.m. about cleaning spray getting in his eyes. Later that day, but not until med pass which was at 8:00 p.m., was he seen and evaluated. The records indicate that he was taken to medical and it was noted that his eye was red and irritated.  He was given eye wash to wash his eyes out and also given some natural tears.  He was thereafter allowed to return to the dorm according to Nurse Lirette.

On the next day during med pass at 8:00 a.m.  Faye was again seen by a nurse for his eye injury.  He again was given liquid tears and he was told that he could purchase over the counter medicine during med pass according to Nurse Tina. Additionally, on October 31, 2016, he complained during 8:00 p.m. med pass that his eye was still bothering him.  He was seen at that time and given liquid tears. Emergency Medical Technician Theriot also noted swelling to his eye and indicated that he would refer him for a medical doctor evaluation.

On November 1, 2016, he was seen again for the irritation in his right eye.  It seems that he was seen by the doctor given a prescription and told to return in ten days for a check-up. On November 10, 2016, he returned for a recheck of the right eye which revealed blurriness in the right eye.  As a result, he was referred to an ophthalmology consult.

Finally on November 29, 2016 he was taken to Chabert Medical for an ophthalmology check-up. He was seen by Dr. Gallagher an Internal Medicine doctor. Upon examining his eye no corneal scarring was seen. The vision reading of the right eye was 20/25. She did notice some PEEs or Punctate Epithelial Erosion which she concluded may be residual surface disease from the injury. She issued a prescription of artificial tears with instruction to restart him on it that day. After the visit one pair of brown plastic frame eyeglasses were ordered on December 14, 2016. There were no additional medical records arising from the chemical spray incident.

Faye therefore was seen and treated for his complaint following his request for care. While it is true that the service was provided several hours after he requested it, he cannot establish that any of the medical personnel or even deputy Fanguy were deliberately indifferent to a known and serious condition or illness. As a result, the court finds that claims against Nurse Gaudet and Deputy Fanguy are frivolous.

## IV.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Joshua William Faye's § 1983 claims against the defendants, the Terrebonne Parish Consolidated Government, Warden Claude Triche, Deputy Brody Fanguy and Nurse Kelly Gaudet, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

It is **FURTHER RECOMMENDED** that **Motion to Dismiss (R.Doc. 21)** is **DISMISSED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 31st day of May, 2017.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.