UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA WILLIAM FAYE | CIVIL ACTION |
| VERSUS | SECTION: "B"(4) |
| TERREBONNE PARISH CONSOLIDATED GOVERNMENT, ET AL | NUMBER: 17-1694 |

## ORDER AND REASONS

Before the Court is a Report and Recommendation ("the Report") issued by Magistrate Judge Karen Wells Roby recommending dismissal of Joshua William Faye's ("Plaintiff" or "Faye") claim, thereby rendering Nurse Kelly Gaudet's motion to dismiss as moot. (Rec. Docs. 21 and 27). In response, Plaintiff timely filed objections. (Rec. Doc. 31).

For the reasons outlined below,

**IT IS ORDERED** that the Report is **ADOPTED**, overruling objections to same, and made part of our opinion;

**IT IS ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the motion to dismiss (Rec. Doc. 21) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for a *Spears* hearing (Rec. Doc. 28) is **DISMISSED AS MOOT.**

Plaintiff is an inmate housed in the Bossier Medium Security Facility in Plain Dealing, Louisiana. (Rec. Doc. 27 at 1). He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the Terrebonne Parish Consolidated Government ("TPCG"), Warden Claude Triche, Deputy Brody Fanguy, and Nurse Kelly Gaudet. *Id.*[1]

Plaintiff alleges that while incarcerated in the Terrebonne Parish Criminal Justice Complex ("TPCJC") he was doing cleaning work with Deputy Fanguy as Deputy Fanguy was spraying a cleaning chemical. (Rec. Doc. 1 at 6). Some of the chemical got into Faye's eye. *Id.* When Faye complained of pain, Fanguy responded that the chemical would not kill him and he would be all right. *Id.* Plaintiff and Deputy Fanguy then continued with their work. *Id.*

Faye alleges he told Nurse Gaudet that the spraying event was a medical emergency. *Id.* He states Nurse Gaudet refused to give him medical attention and instead told him to see the nurse at 8:00 P.M. *Id.*

In his initial complaint, Plaintiff sought compensation for his pain and suffering and for "future damages" in the amount of seventy-five thousand dollars. *Id.* Additionally, Plaintiff sought the termination of all defendants or their suspension and the elimination of their pay. *Id.*

---

[1] In his objection to the report, Plaintiff acknowledges that he has no claim against Warden Claude Triche. (Rec. Doc. 31 at 3).

**Magistrate Judge's Report and Recommendation**

Magistrate Judge Roby examined Plaintiff's claims and whether Plaintiff was able to state a claim against the parties involved. (Rec. Doc. 27 at 2-9). She determined that the claim against the TPCG was invalid due to Plaintiff's inability to point directly to a parish policy or custom related to the incident involving the chemical splash. *Id.* at 3. Next, she found the claim brought against Warden Triche frivolous because Warden Triche was not personally involved in the acts causing the alleged deprivation of Plaintiff's constitutional rights. *Id.* at 4. Finally, she recommended that Plaintiff's claim for medical indifference be denied. *Id.* at 8.

**Plaintiff's Objections**

Plaintiff states that he sought medical treatment from the time he was sprayed at 9:00 A.M. until 4:00 P.M., which is when Nurse Gaudet made her rounds (Rec. Doc. 31 at 1). At that point, Nurse Gaudet allegedly told him to wait until 8:00 P.M. *Id.* He claims that the spraying event and failure to follow proper procedure with regards to an injury amounted to cruel and unusual punishment. *Id.* He acknowledges that he has no claim against Warden Triche. *Id.* at 3. Plaintiff further objects to dismissal of the TPCG because this organization employs both Nurse Gaudet and Deputy Fanguy and is therefore responsible for their actions. *Id.* Finally, Plaintiff now only requests that (1) Deputy Fanguy and Nurse Gaudet take responsibility for

their actions through an apology letter; and (2) the three Defendants pay his medical bills, court costs, and $1,500 for his pain and suffering. *Id.* at 4-5.

**LAW & ANALYSIS**

To establish liability against a parish government under §1983, Plaintiff must point to the parish's policy, custom, or breach of duty that caused the alleged constitutional deprivation. *See Monell v. N.Y.C Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (municipals may be held liable under § 1983 when the Plaintiff's injury arises directly from a policy put in place by the municipality).

In *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747 (5th Cir. 2009), a group of street preachers were conducting an event in Columbia, Louisiana. *Id.* at 750. An off-duty State Trooper requested that an on-duty officer move the preachers to another area. *Id.* at 750-51. After receiving word from the State Trooper, the ministers moved to property owned by First United Methodist Church. *Id.* at 751. At this time, a State Trooper informed the preachers that they needed to move. *Id.* When they refused to do so, the State Trooper placed the ministers under arrest. *Id.* The Ministry organization filed suit against Columbia complaining that they were liable for infringing the ministers'

4

rights to free speech. *Id.* The court held that the ministers could not point to an ordinance or custom placed by Columbia that lead to the violation of their rights. *Id.* at 755. Although the ministers attempted to argue that there was a pattern of Columbia officers infringing upon their rights, the court reasoned that since there were several occasions that the police did not intervene in the demonstrations, the ministers could not point to a persistent, widespread practice of infringement upon the rights of the ministers. *Id.* at 754-55.

Additionally, in *Jones v. Spencer*, No. 16-CV-1745, 2016 WL 6574162 (E.D.La. Jan 5, 2017), the court held that an inmate could not sue the City of New Orleans as a municipality because the inmate could not point to a policy or custom promulgated by the city that led to his condition. *Id.* at *6-7. The inmate was shot prior to entering prison. *Id.* at *1. Due to a delay in medical attention, the inmate felt extreme discomfort and now walks with a limp. *Id.* at *2. The court reasoned that since the inmate could not point to any custom or policy put into place by the City that led to the delay, the inmate could not state a claim against the city. *Id.* at *6-7.

Much like the ministers in *World Wide Street Preachers* and the inmate in *Spencer*, Plaintiff's claim does not point to any parish policy or custom related to the incident involving the chemical spill. Therefore, this claim lacks merit.

Plaintiff's medical indifference claims against Nurse Gaudet and Deputy Fanguy arise under the Due Process Clause of the Fourteenth Amendment, which places a duty on the State and its actors to protect against harm to persons in confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). To succeed, the plaintiff must show that an official acted with deliberate indifference to his constitutional rights. *Id.* at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Deliberate indifference to the serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment and gives rise to a claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even a layman would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). Additionally, a prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (5th Cir. 2004).

While inadequate medical treatment of inmates may rise to the level of a constitutional violation at a certain point, malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534

(5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under 1983."); "(same)" *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

The record shows that while at the TPCJC, Plaintiff complained about the cleaner in his eyes at 9:00 A.M. on October 28, 2016. (Rec. Doc. 27 at 8). Although Plaintiff's treatment occurred hours later, he was treated the same day. *Id.* at 6. In fact, Dr. Gallagher, an internal medicine doctor, found that there was no corneal scarring in Plaintiff's eye. *Id.* at 6-7.

In *Mendoza v. Lynaugh*, the court held that a prisoner failed to show that a delay in medical treatment led to substantial harm and therefore the medical staff was not deliberately indifferent. 989 F.2d at 193. There, Mr. Mendoza suffered an injury in March 1980 to his spine while at work. *Id.* He received medical care through the summer of 1990 but claimed deliberate indifference, in part, because of an eleven month delay for recommended physical therapy and a seven month delay getting a recommended back brace. *Id.* at 193-194. The court reasoned that Mendoza could not point to either a deliberate indifference to

medical attention or substantial harm resulting from the delay. *Id.* at 195. Therefore, the court affirmed the district court's dismissal. *Id.*

Additionally, in *Lazard v. Gusman*, No. 14-CV-2860, 2015 WL 9652965 (E.D.La. Nov. 30, 2015), the court held that when the prison delayed providing an inmate with their medication they were not deliberately indifferent. *Id.* at *6. The inmate did not initially receive medication for hypertension, diabetes, and mental illness. *Id.* at *1. After requesting medical attention, the inmate went two weeks without seeing the nurse and then another two weeks before he was examined by a doctor. *Id.* at *2. The court reasoned that ultimately the inmate received the necessary care and there was no medical indifference. *Id* at *6.

In the present case, Plaintiff received same-day medical treatment approximately eleven hours after his alleged injury. (Rec. Doc. 27 at 7). He was given eye wash and natural tears to clean his eye. *Id.* The next day, Plaintiff was seen by a nurse. *Id.* Once again, he was treated and told to purchase over-the-counter medicine. *Id.* Plaintiff's eye continued to show irritation which culminated in an examination by an ophthalmologist. *Id.* He did not suffer any corneal scarring. *Id.* at 6-7. Plaintiff received a prescription for artificial tears and a pair of protective eyeglasses. *Id.* Plaintiff is unable to show that he endured

substantial harm from a delay in medical attention. Therefore, medical indifference claims here are without merit.

Plaintiff was unable to point to a policy of the TPCG that led to his injury or to show that delaying his medical treatment by a few hours rises to the level of medical indifference. In his response to the Report, Plaintiff acknowledges that his initial requests were outrageous, but he does not address his lack of evidence. Therefore, his claims are dismissed as frivolous.

New Orleans, Louisiana, this 26th day of September, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE